IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHANNON D. BROWN,                    :
                                     :
            Plaintiff,               :
                                     :
    v.                               :   3:16-CV-2528
                                     :   (JUDGE MARIANI)
LACKAWANNA COUNTY, CITY OF           :
SCRANTON, DETECTIVE THOMAS J.        :
DAVIS, DETECTIVE VINCENT R.          :
BUTKIEWICZ, PROBATION OFFICER        :
NINA GOMEZ,                          :
                                     :
            Defendants.              :

## MEMORANDUM OPINION

## I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 52) by

Magistrate Judge Mehalchick in which she recommends that the Motion to Dismiss

Plaintiff's Amended Complaint filed by Defendants Shane Scanlon, Thomas J. Davis,

Vincent R. Butkiewicz and Lackawanna County (Doc. 37) and Defendant Gomez's Motion to

Dismiss Plaintiff's Amended Complaint Pursuant to F.R.C.P. 12(b)(6) (Doc. 38) be granted,

all claims be dismissed with prejudice, and the Clerk of Court be directed to close the case.

(Doc. 52 at 21.)

A District Court may "designate a magistrate judge to conduct hearings, including

evidentiary hearings, and to submit to a judge of the court proposed findings of fact and

recommendations for the disposition" of certain matters pending before the Court. 28

U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate

Judge's Report and Recommendation, the District Court "shall make a *de novo*

determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also* Fed. R. Civ.

P. 72(b)(3); M.D. Pa. Local Rule 72.3; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).

"If a party does not object timely to a magistrate judge's report and recommendation, the

party may lose its right to *de novo* review by the district court." *EEOC v. City of Long*

*Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). However, "because a district court must take

some action for a report and recommendation to become a final order and because the

authority and the responsibility to make an informed, final determination remains with the

judge, even absent objections to the report and recommendation, a district court should

afford some level of review to dispositive legal issues raised by the report." *Id.* at 100

(internal citations and quotation marks omitted).

    The time for filing objections to Magistrate Judge Mehalchick's R&R has passed and

no party has filed any response to the R&R.

    Upon review of the R&R for clear error or manifest injustice, the Court will not adopt

the R&R.

## II. BACKGROUND

The R&R sets out a detailed background of this case. (Doc. 52 at 2-5.) For the purpose of this Memorandum, the Court highlights facts alleged in Plaintiff's Amended Complaint (Doc. 29) and additional facts of record relevant to the analysis which follows. Of utmost significance are Plaintiff's allegations of unlawful seizure and prolonged detention without charges properly lodged against her and without arraignment on those charges.

Pursuant to a Search Warrant obtained in the course of a drug investigation (Doc. 37-3), the Scranton Police Department and members of the Lackawanna County District Attorney's office forcibly entered Plaintiff's home between 5:30 and 6:00 a.m. on January 8, 2015 (Doc. 29 ¶ 8). Plaintiff awoke to the sound of breaking glass, heard glass being broken a second time, and stood on her bed because she was scared. (Id.) She then heard a loud boom and the door came crashing into her bedroom. (Id.) As the police entered the bedroom, they announced that they were from the Scranton Police Department and, with guns pointed at Plaintiff, said "we have a search warrant get the fuck on the floor." (Id. ¶ 9.) Plaintiff complied and was informed by Defendant Thomas Davis, a Lackawanna County detective, that heroin was being sold from her home. (Id.) Plaintiff was lying on the floor of her bedroom in her underwear when she told Defendant Davis that she was a Muslim woman and she asked to be allowed to put clothes on. (Id.) Detective Davis refused her request. (Id.) Once the police search team cleared the house and found that Plaintiff was alone, Defendant Davis got her off the floor but would not allow her to put

3

clothes on. (*Id.*) Defendant Davis then informed Plaintiff that she was not under arrest but he was putting handcuffs on, saying "I am placing these handcuffs on you for your protection and mine." (*Id.*) Although several men were able to see her, Plaintiff was not allowed to cover her body for an hour and a half while her home was being searched. (*Id.* ¶ 10.)

During this time, Plaintiff's landlord called her cellphone and Detective Davis told him heroin was being sold from Plaintiff's apartment, a statement Plaintiff calls "defamatory." (*Id.* ¶ 11.) After that call, Plaintiff asked to be able to call her sister, and Defendant Davis made the call on Plaintiff's cellphone. (*Id.*) Defendant Davis told Plaintiff's sister that heroin was being sold from Plaintiff's home. (*Id.*) No heroin was found in the search. (*Id.*)

At approximately 7:00 a.m., Plaintiff, who was having her menstrual cycle at the time, told Detective Davis that she needed to use the bathroom. (*Id.* ¶ 12.) Detective Davis called a female officer to the house and, once she arrived, the female officer took Plaintiff to an adjoining room and searched Plaintiff who was still undressed and men were able to see her. (*Id.* ¶ 13.)

After searching the living area, Defendant Davis produced a small black jewelry box with a small bag that appeared to contain marijuana (a quantity identified by Plaintiff to be "under a gram") and asked Plaintiff if it was hers. (*Id.* ¶ 14.) Plaintiff said it was not and informed Defendant Davis that she was on probation and subject to random urine testing. (*Id.*) Defendant Davis returned a short time later with another black bag which Plaintiff later

4

learned contained "spice." (*Id.*) Defendant Davis again asked Plaintiff if it was hers, and she responded that she did not know what it was. (*Id.*)

Eventually Plaintiff dressed and only Defendant Davis and Defendant Vincent Butkiewicz, another Lackawanna County detective, were in her home. (*Id.* ¶ 15.) She was not shown the warrant at any time or read *Miranda* warnings, and she was not told she was under arrest. (*Id.*) Defendant Davis informed Plaintiff that she would be taken downtown to be fingerprinted and photographed and then she would be released. (*Id.* ¶ 16.)

After being taken to the Scranton courthouse, Defendant Nina Gomez, Plaintiff's Lackawanna County probation officer, arrived and asked Plaintiff what happened. (*Id.* ¶ 16.) Defendant Gomez did not give Plaintiff a chance to answer and informed Plaintiff that she was going to the Lackawanna County prison. (*Id.*) Plaintiff had not seen a magistrate at that point. (*Id.*)

Upon entering the prison, Plaintiff was told that there was a warrant for the "arrest regarding the current charges to which I am being processed into the county for, possession of marijuana." (*Id.* ¶ 17.) Plaintiff was held in the county prison from January 8, 2015, until March 7, 2015, without seeing a magistrate judge or any other court official. (*Id.* ¶ 18.) Plaintiff did not have a probation revocation hearing to which she was entitled under *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). (*Id.*)

Plaintiff had a "video court hearing" on March 7, 2015, and this was the first she saw a judge or magistrate. (*Id.*) On March 25, 2015, Plaintiff was taken to court, at which time

5

her public defender asked her if she wanted to go home that day and she responded that she did. (*Id.* ¶ 19.) He told her that Defendant Gomez had been in the courtroom minutes earlier but left when she was informed that Plaintiff could not be violated for a "summons offense." (*Id.*) The public defender advised Plaintiff "to plead guilty and appeal the case in 30 days." (*Id.* ¶ 20.) Plaintiff pled guilty but thought she was pleading to the marijuana charge rather than the disorderly conduct charge to which she actually pled guilty. (*Id.* ¶¶ 20-21.) Plaintiff was not released from prison until April 6, 2015, at which time her home had been condemned and she was homeless. (*Id.* ¶ 23.)

Plaintiff asserts that her First Amendment right to religious freedom was violated when no female officer was present to assist in serving the warrant and she was not allowed to obtain clothing when her religious beliefs/faith did not permit being exposed to males in her state of undress. (*Id.* ¶ 28.) She was denied "due process of law" related to the search and deprivation of rights guaranteed by due process and equal protection. (*Id.* ¶ 29.) Defendant Davis violated her First Amendment right to religious freedom, her Eighth Amendment right to be free of cruel and unusual punishment, and her Fourteenth Amendment right to due process of law based on being kept in an exposed state in front of the males executing the warrant when he knew the people named in the warrant were already in custody, by not reading her *Miranda* warnings, and not showing her the search warrant. (*Id.* ¶ 30(1).) Defendant Butkiewicz violated the same rights by standing and doing nothing to rectify the situation and possessing the same knowledge as Defendant Davis.

6

(*Id.* ¶30(2).) Defendant Gomez violated her Fourteenth Amendment right to due process of law by depriving her of liberty and property without a hearing. (*Id.* ¶ 30(3).) Regarding Defendants Lackawanna County and City of Scranton, Plaintiff states they hold "authority over those of its own agencies and employees under its jurisdiction." (*Id.* ¶ 4.)

Several documents were attached to the parties' filings and the Court will set out those pertinent to the analysis of Plaintiff's claims.

The Application for Search Warrant and Authorization dated January 7, 2015, was signed by Defendant Davis as the Affiant and Magisterial District Judge Laura Turlip as the Issuing Authority. (Doc. 29 at 11; Doc. 37-3 at 1-2.) "ITEMS TO BE SEARCHED FOR AND SEIZED" were identified as follows: "Heroin, & any & all Controlled Substances listed in Schedule I thru V of the Controlled Substance, Drug, Device, and Cosmetic Act of 1972, as amended, Also, any weapons, monies, records, cellular phones, drug paraphernalia used in the illegal use & sales of controlled substances, computers and ledgers."[1] (Doc. 37-3 at 1.) "SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED" indicated only the 912 Mt. Vernon Avenue address. (*Id.*) In the section of the warrant where the applicant is to provide the "NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PRESMISES TO BE SEARCHED," two males were specifically named and two

---

[1] The Court cites to Doc. 37-3, the Search Warrant attached to the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendants Shane Scanlon, Thomas J. Davis, Vincent R. Butkiewicz and Lackawanna County (Doc. 37) because the Search Warrant attached to Plaintiff's Complaint (Doc. 29 at 11) does not contain the second page of the Warrant.

other individuals were identified as follows: "ONE UNKNOWN HISPANIC FEMALE WITH PURPLE COLING [sic]] IN HER HAIR" and "ONE UNKNOWN HEAVYSET BLACK FEMALE." (*Id.* at 1-2.)

A Lackawanna County Court of Common Pleas Order, specifically a "Capias for the Arrest and Detention of a Probation/Parole Violator," was issued by Judge Geroulo on January 9, 2015. (Doc. 42-1 at 2.) Based on violations of two conditions of her probation related to events which transpired the day before, it was ordered that Plaintiff was to be arrested and detained for the violation. (*Id.*) The Order added that "[t]he Probation Officer requests a Gagnon II Hearing be scheduled by the Court." (*Id.*)

The Police Criminal Complaint ("Complaint") attached to Plaintiff's Amended Complaint identifies two filing dates: January 8, 2015, and February 18, 2015.[2] (Doc. 29 at 13.) The Complaint charges Plaintiff with Unlawful Possession of a Controlled Substance ("a small ziploc baggie of suspected marijuana and a baggie of spice") and Unlawful Possession of Drug Paraphernalia ("ziploc baggies, to pack, store, contain, and conceal suspected marijuana and spice"). (*Id.* at 13-14.) The form indicates Deputy District Attorney Shane Scanlon signed the Complaint "via phone" on February 17, 2015. (*Id.*)

---

[2] A Criminal Complaint is attached to each supporting brief. (*See* Doc. 39-1 at 1-5; Doc. 42-1 at 1.) That attached to Defendant Gomez's brief is one page dated January 8, 2015, and is unsigned (Doc. 42-1 at 1); that provided by the remaining Defendants identifies the date filed as January 8, 2015, the date signed as February 17, 2015, though no signature appears, and it includes three additional pages, none of which contain the required signatures (Doc. 39-1 at 1-4). Because Plaintiff provided a copy of a four-page criminal complaint which contains requisite signatures, the Court cites to this document (Doc. 29 at 13-16).

Defendants Butkiewicz and Davis are the named affiants though the body of the Affidavit of

Probable Cause identifies only Defendant Butkiewicz. (*Id*. at 14-15.) Both Defendants

signed the Affidavit on February 18, 2015. (*Id*. at 15.) The Affidavit states that Plaintiff was

given a copy of the search warrant and given her *Miranda* warnings by Defendant

Butkiewicz. (*Id*.) After providing details about the search of Plaintiff's home and person, the

Affidavit states the following:

> Brown is currently on Lackawanna County Adult Probation for marijuana
> possession. Her probation officer, NINA GOMEZ, was notified of her arrest
> and filed a detainer against BROWN. GOMEZ later told me that BROWN is
> also under Dauphin County's supervision, as well, and they were also filing a
> detainer against BROWN. BROWN is currently lodged in the Lackawanna
> County Prison.

(*Id*.) Defendants request for an arrest warrant is dated February 17, 2015 (*id*. at 16), and

the Arrest Warrant was issued by Magisterial District Judge Sean P. McGraw on February

18, 2018 (Doc. 29 at 33). The Arrest Warrant indicates the "Case Filed" date of February

18, 2015, and an "Offense Date" of January 8, 2015. (*Id*.)

The Magisterial Judge Criminal Docket for this matter indicates the following: the

Criminal Complaint was filed on February 18, 2015, and the Arrest Warrant was issued the

same day; the Arrest Warrant was returned served on March 7, 2015, and bail was set that

day; on March 9, 2015, a Preliminary Arraignment was scheduled and a Preliminary

Hearing was scheduled; on March 16, 2015, the Preliminary Hearing was continued and

rescheduled; and on March 25, 2015, the Unlawful Possession of a Controlled Substance

charge was withdrawn, the Possession of Drug Paraphernalia charge was changed to "Disorderly Conduct Engage in Fighting" moved "to Non-Traffic." (Doc. 42-1 at 4.) Other docket entries show that bail had been set as "ROR" on March 7, 2015. (Doc. 42-1 at 5.)

The Non-Traffic Citation lists the offense of Disorderly Conduct, described as "Defendant did create a hazardous or physically offensive condition by possessing drug paraphernalia on 1/8/15." (Doc. 29 at 35.) Plaintiff signed for receipt of the citation on March 25, 2015, which listed total fines and costs to be $231.00. (Id.) Plaintiff pled guilty on March 25, 2015, and satisfied her penalty that day. (Doc. 29 at 38; Doc. 42-1 at 4.)

By Lackawanna County Court of Common Pleas Order of April 1, 2015, signed by Judge Geroulo, the Capias issued on January 9, 2015, was rescinded based on the Probation Officer's report that the new charges were reduced to a summary offense. (Doc. 42-1 at 10.) The Order further directed that Plaintiff was subject to the regular conditions of probation and such special conditions as required by the Probation Officer, and she was to report to the Probation Officer after discharge from the Lackawanna County Prison. (Id.)

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the reviewing court may dismiss a complaint for "failure to state a claim upon which relief may be granted." Detailed pleading is not required—"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give fair notice of what the . . . claim is and the grounds upon which it rests,' Conley v. Gibson, 355

10

U.S. 41, 47 . . . (1957)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Court noted that, although Rule 8 does not

require detailed factual allegations, "it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). *Iqbal* also

reiterated the *Twombly* guidance that "[a] pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555 . . . Nor

does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.' *Id.* at 557." 556 U.S. at 678.

> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to state a claim to relief that is plausible on its face."
> [*Twombly*, 550 U.S.] at 570 . . . . A claim has facial plausibility when the plaintiff
> pleads factual content that allows the Court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged. *Id.*, at 556 . . . . The
> plausibility standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully. *Ibid.*
> Where a complaint pleads facts that are "merely consistent with" a defendant's
> liability, it "stops short of the line between possibility and plausibility of
> 'entitlement to relief.'" *Id.* at 557.

556 U.S. at 678.

Pursuant to *Twombly* and *Iqbal*, the Court of Appeals for the Third Circuit set out

three steps required of a court reviewing the sufficiency of a claim in *Connelly v. Lane*

*Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a
> claim." *Iqbal*, 556 U.S. at 675 . . . . Second, it should identify allegations that,
> "because they are no more than conclusions, are not entitled to the
> assumptions of truth." *Id.* at 679 . . . . *See also Burtch v. Milberg Factors, Inc.*,

11

662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial remarks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.09 F.3d at 787. Importantly, a Plaintiff is not required to establish the elements of a *prima facie* case—"the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Connelly*, 809 F.3d at 789 (quoting *Twombly*, 550 U.S. at 556); *see also Phillips v. City of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Additional considerations apply when a plaintiff is proceeding *pro se*. A *pro se* plaintiff's pleadings must be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In doing so, a reviewing court applies the applicable law, "irrespective of whether a *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

Another matter pertinent to the Court's review of the pending motions to dismiss is the consideration of documents filed in conjunction with the Amended Complaint and Defendants' motions. In *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir. 2002, the Third Circuit Court of Appeals established the parameters of the Court's discretion to consider evidence outside a complaint.

> Generally speaking, a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss. Further, as one treatise has explained, simply attaching exhibits to a complaint does not necessarily make that complaint amenable only to summary judgment or foreclose a court from considering those exhibits in its Rule 12(b)(6) ruling: As a general rule, the court may only consider the pleading which is attacked by an FRCP 12(b)(6) motion in determining its sufficiency. The court is not permitted to look at matters outside the record; if such matters are considered, the FRCP 12(b)(6) motion to dismiss is, by the express terms of FRCP 12(b),

converted into a motion for summary judgment. However, the court may consider documents which are *attached* to or submitted with the complaint, as well as legal arguments presented in memorandums or briefs and arguments of counsel. Further, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. Documents that the defendant attaches to the motion to dismiss *are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim*; as such, they may be considered by the court. As previously discussed, certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an FRCP 12(b)(6) motion to dismiss to an FRCP 56 motion for summary judgment.

288 F.3d at 559–60 (internal citations and quotations omitted).

Finally, the district court must extend the plaintiff an opportunity to amend before

dismissing a complaint unless amendment would be inequitable or futile. *See Grayson v.*

*Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## IV. ANALYSIS

Although Plaintiff's Amended Complaint (Doc. 29) does not clearly delineate her

claims, the Court is to liberally construe her pleading and identify causes of action asserted

therein without restriction to the labels specified by Plaintiff. *Dluhos*, 321 F.3d at 369. Here

such a reading reveals that Plaintiff's Amended Complaint alleges violations of her First

Amendment, Fourth Amendment, and Fourteenth Amendment rights under the United

States Constitution and identifies a state law defamation claim. The Court will first address

Defendant Gomez's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to F.R.C.P.

12(b)(6) (Doc. 38) as the matters discussed therein more directly relate to the

circumstances of Plaintiff's incarceration which are of the utmost concern.

## A.   DEFENDANT GOMEZ'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT   TO F.R.C.P. 12(B)(6)

The R&R recommends that Defendant Gomez's motion to dismiss be granted and all

claims against Defendant Gomez be dismissed with prejudice because Plaintiff does not

identify any course of conduct by Defendant Gomez that led to or extended Plaintiff's

detention and Defendant Gomez is entitled to qualified immunity. (Doc. 52 at 18-20.) The

Court concludes that Defendant Gomez has not satisfied her burden of showing that Plaintiff

does not state a plausible claim for relief regarding violations of her Fourteenth Amendment

procedural due process rights.

The Fourteenth Amendment of the Constitution forbids a state from depriving

persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.

> When a plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process, we employ the "familiar two-stage analysis," *Robb v. City of Philadelphia,* 733 F.2d 286, 292 (3d Cir.1984), inquiring (1) whether "the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property' "; and (2) whether the procedures available provided the plaintiff with "due process of law."

*Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000) (quoting *Robb v. City of Phila.,* 733 F.2d

286, 292 (3d Cir.1984)). A panel of the Third Circuit Court of Appeals summarized relevant

14

considerations in *Tarapchak v. County of Lackawanna*, 739 F. App'x 172 (3d Cir. 2018) (not

precedential), explaining that

> [t] he Due Process Clause protects against the extended detention of a criminal
> defendant without a hearing before a judicial officer to contest the validity of the
> detention. *See Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d
> 54 (1975). In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433
> (1979), the Supreme Court held that no constitutional deprivation occurred
> where the arrest was made pursuant to a valid warrant, and the plaintiff was
> jailed for three days over a New Year's weekend before being released, but the
> Court suggested that the lawfulness of "detention pursuant to a valid warrant
> ... will after the lapse of a certain amount of time deprive the accused of liberty
> without due process of law." *Id.* at 145, 99 S.Ct. 2689. The Supreme Court has
> further held that due process requires that courts hold parole revocation
> hearings within a reasonable time after arrest. *Morrissey v. Brewer*, 408 U.S.
> 471, 488, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

739 F. App'x at 176–77.

In *Gerstein*, the Supreme Court looked at the procedures due related to Fourth

Amendment seizure and arrest considerations. The Court held that the prosecutor's

assessment of probable cause was not sufficient alone to justify restraint of liberty pending

trial and identified the constitutionally-required procedures a state must provide a pretrial

detainee, noting that "[b]oth the standards and procedures for arrest and detention have

been derived from the Fourth Amendment and its common-law antecedents." 420 U.S. at

111. The Court expressed preference for the use of arrest warrants to implement the

Fourth Amendment's protection against unfounded invasions of liberty and privacy but also

recognized the validity of an arrest without a warrant where the arrest is supported by

probable cause. *Id.* at 112-13. However, beyond the "brief period of detention to take the

administrative steps incident to arrest, . . . the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id.* at 114. *Gerstein* recognized that state procedures vary widely and there was no single preferred procedure but "[w]hatever procedure a State may adopt, it must provide a fair and reasonable determination of probable cause as a condition for any pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Id.* at 124-25. Concluding that the "prompt" directive in *Gerstein* did not provide sufficient guidance, the Court further directed in *County of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991), that the neutral probable cause determination must generally be provided within 48 hours. The Court added that when "an arrested individual does not receive a probable cause determination within 48 hours . . . the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. *Id.* at 57.

Under Pennsylvania law, "[i]f the defendant was arrested without a warrant . . . , unless the issuing authority makes a determination of probable cause, the defendant shall not be detained." Pa. R. Crim. P. 540. Rule 519 addresses the procedure to be followed in court cases initiated by arrest without a warrant and provides in pertinent part that "when a defendant has been arrested without a warrant in a court case, a complaint shall be filed against the defendant and the defendant shall be afforded a preliminary arraignment by the

16

proper issuing authority without unnecessary delay." Pa. R. Crim. P. 519(A)(1). Where a

detainee was arraigned within 48 hours of his arrest and the arraignment procedure

included a probable cause determination by a neutral magistrate judge "as required by

*Gerstein* and Pennsylvania law," Fourth Amendment and Fourteenth Amendment

procedural due process requirements were satisfied. *Lawson v. City of Coatsville*, 42 F.

Supp. 3d 664 (E.D. Pa. 2014).

In *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Court determined that due process

rights attendant to parole revocation also apply to probation revocation and held that due

process mandates preliminary and final revocation hearings on the same conditions

specified in *Morrisey*:

> At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing. The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the minimum requirements of due process include very similar elements: (a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.

*Gagnon*, 411 U.S. at 786 (citing *Morrissey v. Brewer, supra*, 408 U.S. at 487, 489) (internal quotations omitted).

In her Amended Complaint, Plaintiff alleges that Defendant Gomez violated her Fourteenth Amendment Due Process rights by incarcerating her without a hearing—alleging she did not see a magistrate judge or any court official from January 8, 2015, until March 7, 2015, regarding either her new charge or her probation violation/revocation. (Doc. 29 at 5 ¶ 17.) Plaintiff also avers the following: she had a video hearing on March 7, 2015; she was taken to court on March 25, 2015, at which time she met her public defender who advised her to plead guilty if she wanted to go home that day; the public defender told her that Defendant Gomez was in the courtroom minutes earlier and she was informed that Plaintiff could not be violated on a "summons offense" at which point Defendant Gomez left the hearing; Plaintiff followed the public defender's advice and pled guilty to what she thought was the marijuana charge but learned after that she had pled guilty to a charge of disorderly conduct; and Plaintiff was not released from prison until April 6, 2015. (Doc. 29 at 5-6 ¶¶ 18-23.)

The Court does not adopt the Magistrate Judge's recommendation that Defendant Gomez's motion should be granted and Defendant Gomez dismissed with prejudice. (Doc. 52 at 18.) First, the Court rejects the conclusion that Defendant Gomez is entitled to qualified immunity—Defendant Gomez does not make this argument (*see* Doc. 42) and it is her burden to do so. Although a court may screen a complaint filed in an *in forma pauperis*

18

proceeding pursuant to 28 U.S.C. § 1915 and may dismiss the case "at any time" if the court determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2), here no initial screening occurred. A panel for the Third Circuit Court of Appeals recently stated that "[a] court may *sua sponte* dismiss a claim without affording the plaintiff notice and an opportunity to respond but 'as a general proposition, *sua sponte* dismissal is inappropriate unless the basis is apparent from the face of the complaint.'" *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 119 (3d Cir. 2017) (quoting *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002); *accord Roman v. Jeffes*, 904 F.2d 192, 196 (3d Cir. 1990) (noting that "a court may *sua sponte* raise the issue of the deficiency of a pleading under Rule 12(b)(6) *provided that the litigant has the opportunity to address the issue either orally or in writing*") (emphasis added in *Jennings-Fowler*)).

In the case of a recommendation made for *sua sponte* dismissal in a Report and Recommendation, the litigant has an opportunity to address the issue by filing an objection to the recommendation for dismissal. However, the Court concludes the existence of the opportunity to file objections to a Report and Recommendation is not sufficient to satisfy the concerns addressed in *Jennings-Fowler* and general *pro se* filing considerations. The Court takes seriously the admonition that "[c]ourts and judges exist to provide neutral fora in which persons and entities can have their professional disputes and personal crises resolved. Any degree of impropriety, or even the appearance thereof, undermines our legitimacy and

19

effectiveness." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 732 (3d Cir. 2004). Where Defendants themselves fail to put forth arguments that would compel dismissal of a claim or Defendant, the Court's neutrality is generally best preserved by avoiding *sua sponte* dismissal. Therefore, at the motion to dismiss stage, when a defendant does not make an argument in his motion on a given issue, the Court concludes the best practice is, *at a minimum*, to identify when an action is taken and/or arguments are raised *sua sponte* and explain the right of the litigant to address the issue. Because Plaintiff was not so advised regarding the issue of qualified immunity as it pertains to Defendant Gomez, the Court concludes this would be an improper basis to dismiss claims against Defendant Gomez.

The Court also rejects the R&R's finding that, even if Plaintiff's allegations regarding her confinement were true, confinement without a hearing for 58 days does not show a clear violation of a constitutional right, a finding which supports the conclusion that Plaintiff has not stated a claim upon which relief can be granted. (Doc. 52 at 19-20.) The basis for this determination appears to be the Third Circuit's panel decision in *McSpadden v. Wolfe*, 325 F. App'x 134 (3d Cir. 2009) (not precedential),[3] which the R&R states "held that a mistaken confinement of 1,050 days did not show a clear violation of a constitutional right." (Doc. 52 at 19.) However, *McSpadden* was decided in the qualified immunity context and the Circuit Court panel did not conduct a Fourteenth Amendment procedural due process analysis.

---

[3] The R&R cites "*McFadden*, 325 F. App'x at 139." (Doc. 52 at 19.)

20

Rather, *McSpadden* dealt with an incorrect computation of sentences, and the Court based its affirmance of the District Court's grant of qualifed immunity on "the widely noted confusion in Pennsylvania law with respect to the computation of sentences involving the revocation of probation and parole." 325 F. App'x at 135. Thus, *McSpadden* does not support the proposition that a clear violation of a constitutional right is not shown where the detainee alleges she had no hearing whatsoever for fifty-eight days and was detained for unascertainable reasons for almost three months.

Most importantly, the Court cannot adopt the Magistrate Judge's conclusion regarding Defendant Gomez because the R&R does not conduct the Fourteenth Amendment procedural due process analysis indicated by the authority cited above. As discussed below, such an analysis reveals that Plaintiff has clearly stated plausible claims for relief regarding violation of Fourteenth Amendment procedural due process rights.

A review of the record and the documents set out in the Background above shows that no evidence has been presented which contradicts Plaintiff's allegation that she did not have a hearing before a judicial officer concerning the charges stemming from the January 8, 2015, search or the revocation of her probation until she had a video hearing on March 7, 2015. It appears from the Criminal Docket that the March 7, 2015, hearing related to the charges filed in the Criminal Complaint on February 18, 2015. (*See* Doc. 42-1 at 4, 6.) No evidence has been presented that Plaintiff *ever* had the probation revocation hearings required by *Gagnon*, 411 U.S. at 782. Although Defendant states that Judge Geroulo's

January 9, 2015, Order indicates that the proper procedures were followed (Doc. 42 at 7),
the Court disagrees: Judge Geroulo's "Capias for the Arrest and Detention of a
Probation/Parole Violator" merely states that Plaintiff is to be arrested and detained for the
identified probation violations and "[t]he Probation Office requests a Gagnon II Hearing be
scheduled by the Court." (Doc. 42-1 at 2.) The Order does not establish that the requisite
Gagnon I Hearing took place or that there was any follow up regarding Plaintiff's right to
process due under the Fourteenth Amendment related to probation revocation.

On this record, the Court cannot determine what Defendant Gomez's responsibilities
were to secure the constitutionally mandated procedures, but she was the probation officer
assigned to Plaintiff, Plaintiff did not apparently have the mandated hearings, and the record
does not show that Defendant Gomez did anything at the March 25, 2015, hearing to
ascertain whether Plaintiff's constitutional rights had been or were going to be secured.
Plaintiff satisfied the fee related to the summary charge on March 25, 2015 (Doc. 29 at 35),
and apparently had not had any Gagnon determination regarding probation revocation, yet
she remained detained. No further action occurred until April 1, 2015, when Judge Geroulo
issued an Order rescinding the January 9, 2015, Capias based on the Probation Officer's
report that the new charge was reduced to a summary offense. (Doc. 42-1 at 10.) Despite
the fact that no charges were pending against Plaintiff and the probation revocation had
been rescinded, Plaintiff remained incarcerated until April 6, 2015. (Doc. 39 ¶ 23).
Because this review of the record shows that Defendant Gomez was a central figure in

22

Plaintiff's initial detention and demonstrates plausibility in allegations that she played a role

in Plaintiff's detention following resolution of charges related to January 8, 2015, the Court

concludes claims against Defendant Gomez properly go forward.

With this determination, the Court notes that liability for any Fourth Amendment or

Fourteenth Amendment due process violation related to charges filed on January 8, 2015,

does not fall directly on Defendant Gomez. However, the Court has no doubt that a seizure

occurred here given that a seizure for Fourth Amendment purposes occurs whenever a law

enforcement officer, "by means of physical force or show of authority, has in some way

restrained the liberty of a citizen," *Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968), and the Court

has no doubt that an arrest occurred and Plaintiff was detained for almost two months

before she had any judicial process related to charges for which she was arrested.[4]

Alarmingly, the circumstances related to Plaintiff's detention, from both arrest and probation

violation perspectives, is a morass of confusion and contradiction, not the least of which is

the presentation by Defendants of different versions of the Police Criminal Complaint which

conflict with one another and, more importantly, further conflict with the Police Criminal

Complaint provided by Plaintiff which shows that the Complaint related to January 8, 2015,

charges was not filed until February 18, 2015, based on an Affidavit of Probable Cause of

the same date with an arrest warrant also issued on the same date, *see supra* p.8 n.2, and

---

[4] This is assuming the March 7, 2015, video hearing was related to these charges and satisfied due process requirements.

23

related implications for the validity of the Capias based on the allegedly unlawful conduct of January 8, 2015 (*see* Doc. 29 at 14-16, Doc. 42-1 at 2). While the contours of viable claims related to Plaintiff's seizure and detention can be ascertained as this case proceeds, at this stage of the proceedings the Court simply recognizes the viability of claims related to Plaintiff's seizure and detention.

## B. MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FILED BY DEFENDANTS SHANE SCANLON, THOMAS J. DAVIS, VINCENT R. BUTKIEWICZ AND LACKAWANNA COUNTY

The analysis of the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendants Shane Scanlon, Thomas J. Davis, Vincent R. Butkiewicz and Lackawanna County (Doc. 37) primarily follows the textual framework set out in the R&R (Doc. 52 at 7-18.)

### 1. Claims Against Lackawanna County and City of Scranton

The R&R recommends that the claims against Defendants Lackawanna County and the City of Scranton be dismissed with prejudice because neither Defendant "can be held liable pursuant to § 1983 for an injury solely because it employs a person who allegedly violated Brown's constitutional rights." (Doc. 52 at 7 (citing *Monell v. Dep't of Social Services of New York City*, 436 U.S. 658, 691 (1978)).) The R&R also states that, to hold these entities liable, Plaintiff must "allege that the employees' actions were taken 'pursuant to official policy of some nature'" (*id.*), and she has not made such an allegation.

As a threshold matter, the Court notes that the docket does not show that Plaintiff's Amended Complaint (Doc. 29) was served upon either of these Defendants who were not named in the original Complaint (Doc. 1). (See also Doc. 39 at 3.) The R&R does not discuss whether Lackawanna County waived service by filing the pending motion. Nor does the R&R discuss the sua sponte consideration of the City of Scranton. While the Court understands that the procedural history of this case may have presented a challenge for the proper service of the amended complaint (see Docs. 29, 32, 35), for reasons discussed previously, the Court concludes that sua sponte consideration of the matters related to Defendant City of Scranton is not the best course at this stage of the proceedings.

As to Defendant Lackawanna County, assuming service has been waived, the Court agrees that Plaintiff's Amended Complaint does not provide a basis for liability. However, the Court does not concur that Defendant Lackawanna County should be dismissed with prejudice in that Defendants Butkiewicz, Davis, and Gomez were all Lackawanna County employees at the relevant time, and the Court cannot say at this stage of the proceedings that Plaintiff would not be able to establish liability under the principles outlined in Monell v. Dep't of Social Services of New York City, 436 U.S. 658, 691 (1978). Therefore, dismissal with prejudice is not appropriate pursuant to Grayson, 293 F.3d at 108.

## 2.    Qualified Immunity

Defendants Davis and Butkiewicz assert the defense of qualified immunity against Plaintiff's claimed violations of the Fourth Amendment on the basis of the search of her

home and person. (Doc. 39 at 8.) Although the Court agrees with the Magistrate Judge's

recommendation that the Defendants' motion to dismiss on the basis of qualified immunity

should be denied (Doc. 52 at 11), the Court will review Defendants' qualified immunity

arguments and the Magistrate Judge's analysis because they have broader implications

regarding the disposition of substantive claims.

> Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." *Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231.

> Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *abrogated in part by Pearson*, 555 U.S. 223. If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. *Saucier*, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. *Pearson*, 555 U.S. at 816; *Saucier*, 533 U.S. at 201-02. The Supreme Court of the United States has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his or her conduct violates that constitutional right. *Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006) (citing *Saucier*, 533 U.S. at 202).

*Bomba v. Dep't of Corr.*, No. 3:16-CV-1450, 2018 WL 7019254, at *7–8 (M.D. Pa. Sept. 4, 2018), *report and recommendation adopted in part, rejected in part sub nom. Bomba v. Commonwealth of Pennsylvania Dep't of Corr.*, No. 3:16-CV-01450, 2019 WL 177471 (M.D. Pa. Jan. 11, 2019).

In *Kane v. Barger*, 902 F.3d 185 (3d Cir. 2018), the Circuit Court reversed the grant of qualified immunity to a police officer who, in the course of investigating a potential sexual assault, violated the bodily integrity of the sexual assault victim. The Court distilled from Supreme Court precedent the following principles for determining qualified immunity and, specifically, for determining when a constitutional right may be deemed clearly established:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point to find that a right was clearly established. Rather, to be clearly established, a right need only have a sufficiently clear foundation in then-existing precedent." In this inquiry, we look first to applicable Supreme Court precedent. However, even if none exists, it may be possible that a robust consensus of cases of persuasive authority in the Courts of Appeals could clearly establish a right for purposes of qualified immunity.
>
> Defining the right at issue is critical to this inquiry, and we must frame the right in light of the specific context of the case, not as a broad general proposition. This does not mean that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. Accordingly, it need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear. Said another way, we do not require a case directly mirroring the facts at hand, so long as there are sufficiently analogous cases that should have placed a reasonable official on notice that his actions were unlawful. As such, officials can still be on notice that their conduct violates established law even in novel factual circumstances.

27

*Kane*, 902 F.3d at 194-195 (internal citations and quotations omitted). As this Court recently noted in *Bomba*, the decision in *Kane* leaves no question that a "case directly on point" is not required in order to find that a constitutional right was clearly established. 2019 WL 177471, at *16-17.

Under the first prong of the qualified immunity inquiry, Defendants cite *United States v. Leon*, 468 U.S. 897 (1984), for the proposition that "[i]f the search warrant authorized the search of Plaintiff's home and person, then the detectives were entitled to rely upon it to satisfy the probable cause requirement and there was no constitutional violation." (Doc. 39 at 8.) Defendants then assert that the search warrant authorized the search of Plaintiff and her home and, as such, there was no constitutional violation. (Doc. 39 at 8.)

Despite this proposed categorical resolution of the qualified immunity inquiry—i.e., if Defendants did not actually commit a constitutional violation, then the Court must find in the defendant's favor, *Saucier*, 533 U.S. at 201—Defendants proceed to discuss the reasonableness of their actions presumably under the second prong of the inquiry, framing it as "whether reasonable officers in defendants' position at the relevant time could have believed, in light of what was the decided case law, that their conduct would be lawful." (Doc. 39 at 8 (citing *Good v. Dauphin County Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).)

To ascertain whether Defendants would be entitled to qualified immunity for the alleged violation of Plaintiff's Fourth Amendment rights, a review of relevant authority is required. The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government," without regard to whether the government actor is investigating crime or performing another function. *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 755–56 (2010) (quoting *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 613–614 (1989)). As the Supreme Court has explained,

> [t]he touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). Reasonableness, of course, depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed. 2d 607 (1975).

*Pennsylvania v. Mims*, 434 U.S. 106, 108-09 (1977). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case . . . [i.e.,] whether the totality of the circumstances justifies a particular sort of seizure." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citations and quotations omitted). In *Terry v. Ohio,* 392 U.S. 1 (1968), Chief Justice Warren stated

> [t]he scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?

392 U.S. at 21-22 (citations omitted).

As set out previously, a seizure for Fourth Amendment purposes occurs whenever a law enforcement officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry,* 392 U.S. at 19 n.16. The degree of justification required to render a seizure reasonable under the Fourth Amendment varies according to the nature and scope of the detention: "some seizures . . . constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity." *Michigan v. Summers,* 452 U.S. 692, 699 (1981).

As a general matter, where probable cause exists, a seizure of the person is deemed reasonable. *Whren v. United States,* 517 U.S. 806, 817 (1996). However, "seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests" may be unreasonable under the Fourth Amendment. *Id.* at 818.

In *Summers*, the Supreme Court addressed the specific situation where police officers executing a warrant to search a house for drugs encountered occupants of the premises. The Court stated that "[i]n assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the 'articulable facts' supporting the detention are relevant." *Summers,* 452 U.S. at 702. *Summers* identified specific relevant interests to be the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found and the interest in minimizing the risk of harm to the officers involved. *Id.* *Summers* further explained that, even where no special danger is suggested by the evidence of record,

> [i]f the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.

*Summers*, 452 U.S. at 704–05.[5] With this holding, *Summers* specifically noted that "special circumstances, or possibly prolonged detention, might lead to a different conclusion in an

---

[5] The Court later explained that *Summers*

> defined an important category of cases in which detention is allowed without probable cause to arrest for a crime. It permitted officers executing a search warrant "to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705 . . . . The rule in *Summers* extends farther than some earlier exceptions because it does not require law enforcement to have particular suspicion that an individual is involved in criminal activity or

unusual case" but the routine detention at issue where residents of the house were detained while the house was being searched for contraband pursuant to a valid warrant was not such a case. 452 U.S. at 705 n.21. Thus, special circumstances remain a consideration even if the initial seizure is reasonable pursuant to *Summers,* and the facts of the specific case remain relevant in the Fourth Amendment inquiry. *See, e.g., Leveto v. Lapina,* 258 F.3d 156 (3d Cir. 2001). The Court itself reiterated the viability of the "special circumstances" exception to the *Summers* rule in *Los Angeles County, California v. Rettele,* 550 U.S. 609, 615 (2007).

Here Plaintiff was not specifically named in the Search Warrant. (*See* Doc. 37-3.) As set out in the Background above, no person was named in the section of the warrant where the applicant was to identify the "SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED"—only the 912 Mt. Vernon Avenue address was provided, and two females were identified in the section of the warrant where the applicant was to

---

poses a specific danger to the officers. *Muehler v. Mena,* 544 U.S. 93 . . . (2005). In *Muehler,* applying the rule in *Summers,* the Court stated: "An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" 544 U.S. at 98 . . . .(quoting *Summers, supra,* at 705, n.19 . . . . The rule announced in *Summers* allows detention incident to the execution of a search warrant "because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial." *Muehler, supra,* at 98.

*Bailey v. United States,* 568 U.S. 186, 193 (2013).

provide the "NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PRESMISES

TO BE SEARCHED": "ONE UNKNOWN HISPANIC FEMALE WITH PURPLE COLING [sic]

IN HER HAIR" and "ONE UNKNOWN HEAVYSET BLACK FEMALE." (*Id.* at 1-2.) This

review of the Search Warrant shows Defendants incorrectly assert that these individuals

were identified as "persons to be searched" (Doc. 39 at 3), these individuals were identified

only as owners, occupants or possessors of the premises to be searched. Thus, contrary to

Defendants' argument that the search warrant gave them authority to search Plaintiff, even

if Defendants were correct that Plaintiff was the "unknown heavyset black female" (*id.* at

10), the face of the Search Warrant did not grant the authority to search Plaintiff or any

other person. Although *Summers* allows for the seizure which took place incident to the

search of the residence, the reasonableness of this particular seizure remains an issue.

The explication of the qualified immunity inquiry and relevant Fourth Amendment

authority set out above shows the deficiencies in Defendants' argument regarding their

entitlement to immunity. As noted previously, after citing *United States v. Leon*, 468 U.S.

897 (1984), for the proposition that "[i]f the search warrant authorized the search of

Plaintiff's home and person, then the detectives were entitled to rely upon it to satisfy the

probable cause requirement and there was no constitutional violation," Defendants conclude

that the search warrant authorized the search of Plaintiff and her home and, as such, there

was no constitutional violation. (Doc. 39 at 8.) This argument is flawed because, as

previously determined, the search warrant on its fact did not provide probable cause to

search a person, and, further, Defendants fail to recognize the distinction between probable cause to initiate a seizure and the manner in which the seizure proceeds and is conducted-- even if probable cause exists, the manner may be deemed unreasonable under the Fourth Amendment. *See, e.g., Whren v. United States,* 517 U.S. 806, 817 (1996). This is not to say that the search and seizure about which Plaintiff complains was conducted in an unreasonable manner, it is only to point out that, because "reasonableness" is the touchstone of the Fourth Amendment inquiry, Defendants cannot so easily establish the lack of a constitutional violation. *Mims,* 434 U.S. at 108-09.

Defendants provide only conclusory statements that no constitutional right was violated and do not articulate a coherent argument that, if they committed a constitutional violation, the constitutional right in question was not "clearly established" at the time they acted, *Pearson,* 555 U.S. at 816; *Saucier,* 533 U.S. at 201-02. (*See* Doc. 39 at 7-11.) Their assertions of reasonableness and citations to cases of general applicability do not "frame the right in light of the specific context of the case, not as a broad general proposition." *Kane,* 902 F.3d at 194-195. Defendants must do more to satisfy their burden of showing they are entitled to qualified immunity given the totality of the circumstances in this case. Thus, as noted above, the Court agrees with the R&R's recommendation that

Defendants' motion to dismiss the claims against Defendants Davis and Butkiewicz on the basis of qualified immunity is properly denied.[6]  (Doc. 52 at 11.)

### 3.    Claims Against Defendant Butkiewicz

The R&R recommends that claims against Defendant Butkiewicz be dismissed with prejudice because there is no allegation in the Amended Complaint that he was personally involved in the alleged wrongs, there is no allegation that he acted in a supervisory capacity, and the Amended Complaint contains no other plausible claim against him.  (Doc. 52 at 11-12.)  The Court does not adopt this recommendation.

Defendants do not make this argument in their supporting brief—the only discussion of allegations against Defendants Butkiewicz and Davis are found in the section of their brief addressing Fourth Amendment qualified immunity.[7]  (Doc. 39 at 7-11.)  The R&R does not identify the basis for the *sua sponte* dismissal of claims.  Therefore, based on the determination discussed above that *sua sponte* dismissal of claims and/or defendants is not appropriate in the circumstances presented here, the Court will not dismiss claims against

---

[6] Reasonableness considerations identified in the R&R in the context of the qualified immunity inquiry include that Plaintiff was not the target of the investigation, she was compliant and in her underwear "which would tend to indicated an inability to hide dangerous weapons," she stands 4'11", and she was alone in the presence of numerous officers.  (Doc. 52 at 10.)

[7] Importantly, "even where reasonableness is a part of the inquiry for both the constitutional question and for qualified immunity, . . . the inquiries remain distinct."  *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007) (citing Saucier, 533 U.S. at 204-05).

Defendant Butkiewicz at this stage of the proceedings.[8] This determination is bolstered by

Defendant Butkiewicz's involvement in Plaintiff's initial seizure and continuing detention as

evidenced by his participation in the preparation of the Police Criminal Complaint and

information provided in the Affidavit of Probable Cause. (*See* Doc. 29 at 13-16.) In other

words, as of February 18, 2015, Defendant Butkiewicz knew that Plaintiff had been

incarcerated since January 8, 2015, without being charged with any criminal violation based

on her January 8, 2015, seizure, and without having received any related process.

## 4. Claims Against Detective Davis

The R&R also recommends dismissal with prejudice of claims against Defendant

Davis. (Doc. 52 at 18.) As noted above, Defendants do not present any substantive

arguments regarding claims against Defendant Davis. (*See* Doc. 39.) The R&R *sua sponte*

analyzed Plaintiff's First Amendment "Religious Freedom" claim and concluded that she

fails to state a claim for a violation of her First Amendment rights. (Doc. 52 at 13-14.)

Construing Plaintiff's claim for a violation of the Eighth Amendment's prohibition against

---

[8] This is not to say the R&R was incorrect in concluding that there was a paucity of specific allegations against Defendant Butkiewicz in the Amended Complaint. (*See* Doc. 52 at 11-12.) However, even if the Court were to agree that *sua sponte* dismissal were appropriate, Defendant Butkiewicz's general involvement in the events of January 8, 2015, does not support a conclusion that the dismissal should be with prejudice because amendment would be futile. Rather, Defendant Butkiewicz clearly was present at the scene of the execution of the search warrant and further development of facts related to events that occurred could show more direct personal participation. Further, Defendant Butkiewicz completed the Police Criminal Complaint and provided the Affidavit of Probable Cause. (Doc. 29 at 13-16.) This document is indicative of Defendant Butkiewicz's personal involvement in events which transpired.

cruel and unusual punishment as a Fourteenth Amendment violation based on Plaintiff's

pre-trial status or, alternatively, as a Fourth Amendment excessive force claim, the R&R

concludes Plaintiff does not allege that Defendant Davis used excessive force against her

and, therefore, Plaintiff fails to state an excessive force claim. (Doc. 52 at 15-6.) Finally,

the R&R reviews Plaintiff's Fourteenth Amendment claim that she was not read her *Miranda*

rights and was not shown the search warrant, concluding that neither allegation states a

claim for a violation of her Fourteenth Amendment rights.[9] (Doc. 52 at 16-18.)

　　As discussed above, the Court concludes that *sua sponte* dismissal of claims for

which Defendants have not satisfied their burden of showing that Plaintiff has not stated a

---

[9] Interestingly, in deciding that the claims against Defendant Davis should be dismissed with prejudice, the R&R does not discuss a Fourth Amendment search and seizure claim though the R&R found that it was not readily apparent from the face of the Amended Complaint that the restraint and search of Plaintiff was reasaonble under the Fourth Amendment. (Doc. 52 at 10-11.) Thus, it appears that the R&R properly liberally construed Plaintiff's Amended Complaint to include a Fourth Amendment search and seizure claim in one instance but later did not consider it a substantive claim. The Court understands the difficulty involved in deciphering the claims raised in a *pro se* pleading, but the Court is obligated to identify causes of action asserted without restriction to the labels specified by plaintiff and consider the applicable law irrespective of whether the litigant has mentioned it by name. *See, e.g., Dluhos*, 321 F.3d at 369. A Fourth Amendment violation which, though not specifically identified in the Amended Complaint, is clearly an issue in the case as recognized by Defendants and the Magistrate Judge's discuss it in the context of qualified immunity. (*See* Doc. 39 at 6-11; Doc. 52 at 8-11.) As noted previously, reasonableness considerations identified in the R&R in the context of the qualified immunity inquiry include that Plaintiff was not the target of the investigation, she was compliant and in her underwear "which would tend to indicated an inability to hide dangerous weapons," she stands 4'11", and she was alone in the presence of numerous officers. (*See supra* n.6 (quoting Doc. 52 at 10).) Defendants also discuss reasonableness, albeit in a conclusory manner. (*See* Doc. 39 at 8-11.) The Court's determination that Plaintiff's Amended Complaint alleges a Fourth Amendment search and seizure claim is based on the questions which are raised concerning "the reasonableness in all the circumstances of the particular governmental invasion," *Terry*, 392 U.S. at 19, at issue here.

plausible claim for relief, as is the case with Plaintiff's claims against Defendant Davis, is ill-advised at this stage of the proceedings. Therefore, the Court will not dismiss claims against Defendant Davis. As with Defendant Butkiewicz, this determination is bolstered by Defendant Davis's involvement in Plaintiff's initial seizure and continuing detention as evidenced by his participation in the preparation of the Police Criminal Complaint and information provided in the Affidavit of Probable Cause. (*See* Doc. 29 at 13-16.) In other words, as of February 18, 2015, Defendant Davis knew that Plaintiff had been incarcerated since January 8, 2015, without being charged with any criminal violation based on her January 8, 2015, seizure, and without having received any related process.

## 5.    Leave to Amend

The R&R recommends that all claims and Defendants be dismissed with prejudice and that granting further leave to amend would be futile. (Doc. 52 at 20-21.) Based on the foregoing analysis, only Defendant Lackawanna County will be dismissed from this action and the Court does not conclude that leave to amend would be futile. Defendants Butkiewicz, Davis, and Gomez are all Lackawanna County employees, Petitioner was incarcerated at the Lackawanna County Prison, and her substantive claims go forward. On this record, the Court cannot rule out that amendment could raise a plausible claim that some alleged wrongdoing related to official policy or custom. *See Monell*, 436 U.S. 658.

## C.   OTHER MATTERS

### 1.   Defamation

The Court construes Plaintiff's Amended Complaint to assert a state law claim for defamation against Defendant Davis. (*See* Doc. 29 ¶ 11.) Because this claim has not been discussed by Defendants or the Magistrate Judge, it goes forward.

### 2.   *Heck v. Humphrey*

The R&R noted that it did not address Defendants' arguments that Plaintiff's claims were barred by *Heck v. Humphrey*, 512 U.S. 447 (1994), because dismissal of the claims was warranted on other grounds. (Doc. 52 at 7 n.3.) Although the Court does not adopt the recommendation that all claims be dismissed with prejudice, the Court concludes that discussion of the application of *Heck* to the claims raised in the Amended Complaint is not warranted in that Defendants' narrowly construe Plaintiff's claims and do not provide argument that *Heck* bars the constitutional claims discussed herein. (*See* Doc. 39 at 13-14; Doc. 42 at 9.) Significantly, here Plaintiff challenges her detention related to the process due for both her probation revocation and the charges stemming from January 8, 2015, events (Doc. 29 ¶¶ 18,19, 30(3)), and *Heck* does not clearly foreclose relief related to these claims, *see, e.g.*, *Adams v. Jones*, Civ. A. No. 96-4377, 1999 L178365, at *6 (E.D. Pa. Mar. 30, 1999).

## V. CONCLUSION

For the reasons discussed above, the Court will not adopt the R&R. The Motion to Dismiss Plaintiff's Amended Complaint filed by Defendants Shane Scanlon, Thomas J. Davis, Vincent R. Butkiewicz and Lackawanna County (Doc. 37) will be granted in part and denied in part. It will be granted but only to the extent that Defendant Lackawanna County is dismissed without prejudice and with leave to amend; the motion will be denied as to all other Defendants and in all other respects.[10] Defendant Gomez's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to F.R.C.P. 12(b)(6) (Doc. 38) will be denied.

The Court is concerned that Plaintiff's claims of violation of bedrock procedural due process rights have not received the serious consideration they deserve. For the Court to overlook allegations of incarceration for the duration identified without evidence of Plaintiff having received the minimum process due would be antithetical to safeguarding fundamental constitutional principles. To move this case forward expeditiously, the Court will appoint counsel for Plaintiff upon a request from her. Because Plaintiff did not file objections to the R&R, the Court will require her to indicate her intent to proceed with this case by either filing a renewed motion for appointment of counsel within sixty (60) days of

---

[10] Shane Scanlon is not named as a Defendant in the Amended Complaint. In an Order adopting an earlier R&R regarding Plaintiff's original Complaint, Defendant Scanlon was dismissed without prejudice. (Doc. 32 ¶ 1(c).) The Court noted that, although Defendant was entitled to prosecutorial immunity to the extent Plaintiff's claims concerned her prosecution, Plaintiff should be given the opportunity to plead facts properly alleging Defendant Scanlon's personal involvement in the execution of the warrant. (*Id.* at 2 n.2.)

this Order or inform the Court that she wishes to proceed *pro se*. Following this election,

Plaintiff will be allowed to file a second amended complaint setting out more concisely her

claims and the individuals/entities responsible for the alleged wrongdoing. Proper service of

Defendant City of Scranton will be held in abeyance until such time as the contours of this

litigation are clarified.

Robert D. Mariani
United States District Judge